OPINION OF THE COURT
Joseph Gerace, J.
The court considers the issues in and ramifications of this case call for a more detailed decision and order.
*578 In its bench ruling the court stayed suspension of the student petitioner from his college standing where no advance notice of the charges against him had been given nor had a hearing before an impartial body been held. In the court’s view, suspension constitutes a major disciplinary action judgment pursuant to the college’s "Regulations Governing Student Conduct and Community Standards of Behavior”, issued by the council of the State University of New York (SUNY) College at Fredonia, authorized by section 356 of the State Education Law (see, Undergraduate Catalog, 1993-1995).
That regulation was issued in 1967 by the college council pursuant to Education Law § 356 and 8 NYCRR part 500 promulgated by the SUNY board of trustees.
"The State University operates under rules and regulations promulgated by the Board of Trustees [that] * * * have the force and effect of law.” (Gadzella v Neumaier, 67 Misc 2d 585, 586 [Sup Ct, Ulster County 1971].)
Education Law § 356 (3) (g) which empowers the college council to "make regulations governing the conduct and behavior of students” qualifies that power "[s]ubject to the general management, supervision, control and approval of, and in accordance with rules established by the state university trustees” (Education Law § 356 [3]; emphasis added). The statute further provides that the council: "(k) make and establish, and from time to time alter and amend, such regulations pertaining to the affairs of its institution, not inconsistent with law or the rules of the state university trustees, as may be necessary or appropriate to carry out effectively the foregoing powers and duties.” (Emphasis added.)
Those cited provisions of the Education Law are set out in the guidelines established by the board of trustees in section 500.2 (8 NYCRR part 500) directing that the councils "shall promulgate or review and ratify regulations governing the conduct and behavior of students, subject to general guidelines established by the chancellor, and in accordance with law and such other rules or policies as the trustees may from time to time establish”. (Emphasis added.)
The same section 500.2 in subdivision (c), entitled "The need for due process”, states: "Where regulations govern student disciplinary proceedings, they should reflect the basic concepts of procedural fairness and should make certain that no student shall be expelled or suffer other major disciplinary action *579 as defined by the council for any offense, other than failure to meet required academic standing, without being first given appropriate advance notice of the charges against both him and a hearing before an impartial body or officer as established by the council or chief administrative officer at such campus. While a formal judicial hearing is not required, the hearing should be of such nature as to give the hearing body or officer, as the case may be, full opportunity to hear both sides of the issue in considerable detail. The student may waive in writing the requirements of a hearing.” (Emphasis added.)
In the court’s view a student suspended from classes and attendance at the university is caused to "suffer other major disciplinary action”, and the cited regulation bars such action without the student having been given advance notice of the charges and a hearing before an impartial body or officer.
The court notes that in the Fredonia council’s regulations it omitted to expressly identify suspension as "other major disciplinary action”, but the regulation in its "Procedures and Policies of the College Judicial Board” does so implicitly. Those procedures separate disciplinary warning and disciplinary probation from disciplinary suspension and disciplinary dismissal, in providing that warning and probation may be meted out by the judicial board, with a right of appeal by the student to the college president, whereas in cases involving suspension or dismissal, the judicial board shall recommend such action to the president of the college or his/her designee, in which case the college president’s decision shall be final.
Moreover, paragraph 14 contains the following: "note: In the legitimate interest of the college in protecting property and the safety and welfare of specific individuals or the general public, the college president or his/her designee may temporarily suspend an individual pending a decision by the hearing body.”
The provision clearly recognizes that suspension without hearing (and presumably proper notice) may not be invoked except in limited cases that come within a finding of the college’s legitimate interest in protecting property and the safety and welfare of specific individuals or the general public.
The communications to the student petitioner or his attorney by the vice-president for Student Affairs dated April 3 and ■ April 4, 1995 and the vice-president’s notarized summary of events between March 31, 1995 and April 6, 1995 indicate clearly that the student had been arrested and charged with *580 various offenses "for possession and sale of a controlled substance”, etc., for which he was summarily suspended. It is not shown or alleged that offenses had been committed on or off campus, but it is clear that the college was aware that the student was before the courts in the criminal judicial system and the charges had not been disposed of. There has been no showing that the conduct or behavior of the student petitioner comes within "a finding of the college’s legitimate interest in protecting property and the safety and welfare of specific individuals or the general public.”
It is further noted that under Specific Standards of Behavior, paragraph 2, Interference with Health, Safety or Rights of Other Persons, the council regulation states: "students are required to obey the statutes and laws of the nation and the state, as well as the ordinances and laws of the Village of Fredonia, City of Dunkirk, and Towns of Pomfret and Dunkirk. Conviction of a violation of such laws, statutes, or ordinances may be grounds for suspension or dismissal. ” (Catalog, at 188; emphasis added.)
Conviction may be grounds for suspension, which clearly suggests that conviction of offenses charged in a court may lead to suspension of the student. In the present matter criminal charges are understood to be pending but no conviction of the student has been found.
In Tedeschi v Wagner Coll. (49 NY2d 652, 660 [1980]), a case involving college regulations substantially similar to those of SUNY Fredonia, the Court of Appeals said: "[W]e hold that when a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed” and at page 657, the Court said: "[T]hough we do not arrive at our conclusion on exactly the same reasoning, we agree with the dissenters below that the college has not conformed to the procedure its guidelines prescribed and that plaintiff is entitled to have it do so. We, therefore, reverse.”
The Court of Appeals further said: "[A]s Mr. Justice Felix Frankfurter wrote almost 40 years ago in McNabb v United States (318 US 332, 347), 'The history of liberty has largely been the history of observance of procedural safeguards.’ If that be true in the dealings of the State with citizens enmeshed with its criminal justice system it is no less true in the dealings of a college with the members of its student body. To suggest, as does the dissent, that the college can avoid its *581 own rules whenever its administrative officials in their wisdom see fit to offer what they consider as a suitable substitute is to reduce the guidelines to a meaningless mouthing of words. We do not countenance that in other relationships nor should we between student and college.” (Supra, at 662.)
In the instant case, the court finds that Fredonia has not conformed to its own rules.
In Weidemann v State Univ. of N. Y. Coll. (188 AD2d 974, 975 [3d Dept 1992]), the Appellate Division said: "It is well established that once having adopted rules or guidelines establishing the procedures to be followed in relation to suspension or expulsion of a student, colleges or universities — both public and private — must substantially comply with those rules and guidelines.” (Numerous citations omitted.)
The court notes that the board of trustees in a Regulation on Maintenance of Public Order under Administration and Operation of State-operated Institutions of State University of New York (8 NYCRR, ch V, subch C) promulgated Rules of the Board of Trustees in 8 NYCRR part 535. These rules, adopted in 1969 (and amended in subsequent years), were issued under the authority of Education Law § 6450. They apply to SUNY Fredonia (8 NYCRR 535.2) and have been adopted by the college.
While addressed to the maintenance of public order on campus and control of violence or damage to property, etc., they contain provisions governing due process and suspension which are at variance with provisions of the council’s regulations.
With respect to notification of a hearing to be given a student charged with a violation of the council regulation, "The notification shall be presented to the accused at least five (5) days prior to the hearing.” (Para 2, at 191.)
In paragraph 9 (d) of the Rules for Public Order, "The notice of charges so served shall fix a date for hearing thereon not less than 10 nor more than 15 days from the date of service which shall be the date of mailing where necessary to effect service by mail.” This regulation also makes provision for a continuance for good cause shown.
The penalties under the two regulations are substantially the same: expulsion, suspension, probation, reprimand or warning.
A student charged with a violation so serious as to lead to expulsion or suspension should have the maximum time in *582 which to prepare for the hearing, to examine charges, obtain counsel or representation instead of having different periods of notice and preparation depending upon which of these regulations he is charged with violating. The procedures ought be uniform and in the court’s view the later rules under section 535 should have led to review and been made consistent with the earlier council regulations.
Such appears to be the intent and direction of the board of trustees where the trustees guidelines, section 500.2, state the councils "shall promulgate or review and ratify regulations governing the conduct and behavior of students * * * in accordance with law and make other rules or policies as the trustees may from time to time establish * * * The chancellor of the State University of New York shall, from time to time, cause to be reviewed the regulations established by the councils for consistency with rules and policies of the State University trustees and shall report thereon to the board of trustees at such time and in such manner as it shall direct.” (Emphasis added.)
On the matter of suspension, the Rules for Public Order provide in paragraph 9 (f): "The chief administrative officer may, upon the service of charges, suspend the student named thereon from all or any part of the institution’s premises or facilities, pending the hearing and determination thereof, whenever in his/her judgment, the continued presence of such student would constitute a clear danger to himself/herself or to the safety of persons or property on the premises of the institution or would pose an immediate threat of disruptive interference with the normal conduct of the institution’s activities and functions”.
Suspension before hearing is limited to a finding by the chief administrative officer of specified potential harmful or destructive acts. The note in paragraph 14 quoted above is similar. It is dubious that a student charged with commission of a crime or violation pending before a court, without more so far as the campus is concerned, would provide a basis for invoking paragraph 9 (f) to suspend before hearing.
Paragraph 9 of the Rules and Regulations for Maintenance of Public Order sets out in detail the due process procedure regarding notice, hearing, completion of the hearing committee and determination of charges against students. All decisions are made by the chief administrative officer, who in the case of the State college, is the president.
*583 The procedures and policies of the college judicial board are unclear. The council regulations state, "These standards and procedures shall be implemented only through the Office of Student Affairs and Judicial Boards duly authorized by the Office of Student Affairs.” There is no indication who constitutes the judicial boards, how they are composed, how they are governed and who appoints them. There is reference that the Office of Student Affairs authorizes judicial boards but an office does not appear to be a designated officer acting under an express delegation. These are functions and powers vested in the council and merit being made consistent with the rules set out in 8 NYCRR part 535, as the trustees have directed in 8 NYCRR 500.2.
Nothing the court finds holds that the rules of the Guidelines on Conduct and Behavior are to be different from rules adopted by the trustees, particularly when the trustees have directed consistency to be maintained with their rules.